# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| GLORIA E. ZUNIGA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:10CV162 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Gloria E. Zuniga seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying her claim for Supplemental Security Income ("SSI"). The Commissioner's denial decision became final on January 27, 2010, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

### The Claimant

Plaintiff Zuniga was born on March 5, 1967, and was 40 years of age on her alleged onset date of disability. She has a limited education. Plaintiff has past relevant work experience as a sewer, manufacturing worker, parts machine operator and landscape/nursery worker. Plaintiff alleges disability as of April 28, 2000, due to severe reflex sympathetic dystrophy in her right ankle and low back pain.

## The Administrative Proceedings

Plaintiff filed her application for SSI on May 21, 2007,[1] alleging disability as of April 28, 2000, due to severe reflex sympathetic dystrophy in her right ankle and low back pain. Her claims were denied initially and on reconsideration, and Plaintiff filed a request for a hearing. A hearing was held on June 25, 2009, and a decision denying benefits was issued on August 11, 2009. Plaintiff filed a request for review, and on January 27, 2010, the Appeals Council found no basis for review of the ALJ's decision. Plaintiff then filed this request for judicial review.

The findings of the ALJ relevant to this review include the following:

1. Plaintiff has not engaged in substantial gainful activity since May 21, 2007, the application date.

2-3. Plaintiff's right foot injury with sprained ankle is a severe impairment, but does not meet or medically equal one of the listed impairments in Appendix 1 to Subpart P of Social Security Regulation No. 4.

4-5. Plaintiff retains the residual functional capacity to perform a full range of sedentary work, but is unable to perform any past relevant work.

---

[1] The application in the record is dated January 31, 2007. (*See* Tr. 61-65.) However, this application appears to be one filed prior to the application at issue here; the January application was denied on the basis that Plaintiff's nonexcludable resources exceed Title XVI limitations. (*See id.* at 68.) The May 21, 2007, application is not found in the record.

6-7. Plaintiff was born on March 5, 1967, and was 40 years old, which is defined as a younger individual age 18-44, on the date the application was filed. She has a limited education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled" regardless of whether Plaintiff has transferable job skills.

9. Based on her exertional capacity for sedentary work and her age, education and work experience, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

10. Plaintiff has not been under a disability, as defined in the Social Security Act, since May 21, 2007, the date the application was filed.

## The Scope of Review

The scope of judicial review by this Court of the Commissioner's decision denying benefits is limited. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo*. *Id.* Substantial evidence has been defined as

-3-

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

## Discussion

In making a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. § 416.920 (2011). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. The burden of persuasion is on the claimant through the fourth step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering her age, education and work experience. *Id.*

In this case, the ALJ found at step one of the sequential evaluation that Plaintiff has not engaged in substantial gainful activity since her application date. Proceeding to steps two and three, the ALJ found that Plaintiff suffers from a right foot injury with sprained ankle, a severe impairment, but does not have an impairment, or combination of impairments, that meets or equals the ones listed in Appendix 1, Subpart P, Regulations Number 4.

-4-

The ALJ continued his evaluation at step four, finding that Plaintiff has the residual functional capacity to perform the full range of sedentary work. The ALJ concluded his evaluation at step five, finding that considering Plaintiff's age, education, work experience and residual functional capacity, Medical-Vocational Rule 201.25 directs a finding of "not disabled," and therefore, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

In this action for judicial review, Plaintiff's sole argument is that the ALJ committed reversible error at step two of the sequential evaluation in failing to include complex regional pain syndrome type I (reflex sympathetic dystrophy) ("RSD"), and borderline intellectual functioning as severe impairments. (Docket No. 10, Pl.'s Br. Supp. of Mot. for Summ. J., at 3.)

An impairment is "severe" if it significantly limits Plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.921(a) (2011). The Fourth Circuit has held that in order to find an impairment non-severe, the impairment must be "a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984)(emphasis in original)(quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).

The Court is mindful that the threshold for an impairment to be considered "severe" at step two of the sequential evaluation is low. Nevertheless, Plaintiff bears the burden of

proving the severity of her impairments. *See* 20 C.F.R. § 416.912(a); *Hunter*, 993 F.2d at 35. Plaintiff must provide medical evidence establishing the existence and severity of her claimed impairments, as well as evidence establishing how these impairments affect her functioning. *Id*.

The ALJ found that Plaintiff suffers from a right foot injury with sprained ankle, an impairment that is severe. (Tr. at 10.) Plaintiff argues that in making this finding, the ALJ failed to consider and evaluate the evidence concerning the diagnoses, signs and symptoms of RSD. Plaintiff concedes, however, that the underlying cause of the RSD was the same right foot injury found by the ALJ to be a severe impairment. (*See* Docket No. 10 at 5.) Having found this injury to be severe, the ALJ necessarily considered any pain associated with this impairment whether or not the pain itself was "separately categorized as a distinct [severe] impairment." *Hour v. Halter*, No. 00-169-B, 2001 WL 345616, at *1-2 (D. Me. Apr. 9, 2001)(unpublished decision) (where medical sources discuss a pain disorder solely in relation to an impairment found to be severe by the ALJ, decision to decline to find the disorder a separate severe impairment supported by substantial evidence); *see also Wilson v. Barnhart*, 82 F. App'x 204, 211(10th Cir. 2003)(unpublished decision)(ALJ's exclusion of chronic pain disorder as severe impairment supported by substantial evidence because ALJ sufficiently considered plaintiff's allegations of pain as part of his analysis of plaintiff's physical injuries). The ALJ considered the medical records, including the diagnoses and objective signs of Plaintiff's RSD and her allegations that she is unable to work due to

having pain 100 % of the time, and that her pain was severe despite medication. (*See* Tr. at 10-12.) Although the ALJ characterized Plaintiff's impairment as "right foot injury with sprained ankle," it is apparent that the ALJ did consider evidence of Plaintiff's RSD in finding her ankle impairment to be severe as well as in assessing Plaintiff's residual functional capacity in which he limited Plaintiff to only sedentary work. Accordingly, there was no error in declining to consider the pain disorder as a separate impairment. *See Hour*, 2001 WL 345616 at *1-2; *Wilson*, 82 F. App'x at 211. The ALJ cited medical records for Dr. Albert K. Bartok in 2003. Dr. Bartok confirmed the diagnosis of RSD, found Plaintiff at maximum medical improvement and also found her capable of sedentary work "that is primarily sitting." (Tr. at 11, 204.)

As for Plaintiff's borderline intelligence, Plaintiff relies exclusively on the psychological evaluation report of examining consultant Mark Salomon, M.A., (*see* Docket No. 10 at 5), in which Mr. Salomon found that Plaintiff has a verbal IQ score of 71, a performance IQ of 84 and a full-scale IQ of 75, which puts her in the range for borderline intellectual functioning. (Tr. at 329-30.) Plaintiff argues that based on Mr. Salomon's findings, the ALJ erred in failing to find that her borderline intelligence is a severe impairment.

Diagnosis alone does not establish disability. *See* 20 C.F.R. §§ 416.920, 416.925(d), 416.945. Instead, Plaintiff must establish that she suffers functional limitations caused by borderline intelligence. *See* 20 C.F.R. §§ 416.929, 416.945. In considering whether a

-7-

Case 1:10-cv-00162-JAB -PTS   Document 13   Filed 10/21/11   Page 7 of 9

claimant's alleged mental impairments will have more than a minimal impact on her ability to perform unskilled labor, the ALJ must consider the following factors:

> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include-
>
> . . . .
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).

Here, the only specific limitations Plaintiff alleges are that she completed only the 9th grade and she is unable to read an analog clock. (*See* Docket No. 10 at 5.) Yet, despite Plaintiff's IQ scores, Mr. Salomon expressly concluded that Plaintiff is able to comprehend, retain and follow instructions, sustain attention to execute simple, repetitive tasks, relate in an appropriate manner with follow workers and supervisors, and tolerate stresses and pressures associated with daily work activity. (Tr. at 331-32.) The ALJ, in discussing his step two findings, specifically notes these findings, and concludes that "[there are no apparent factors that would undermine [Plaintiff's] capacity to relate in a friendly and appropriate manner with fellow workers and supervisors.'" (*Id.* at 12.)

This finding is supported by substantial evidence. In addition to Mr. Salomon's findings, the ALJ's decision to exclude borderline intelligence as a severe impairment is supported by Plaintiff's own statements concerning her work history.[2] While working as a shirt inspector and translator, she used technical knowledge and skills and was a lead worker. (Tr. at 103.) While working as a machine operator, Plaintiff trained and supervised employees and was a lead worker. (*Id.* at 104-05.) While working for a temp agency, Plaintiff filled out forms for others, did payroll, and supervised, hired and fired employees. (*Id.* at 104-06.)

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for summary judgment (Docket No. 9) be denied, that the Commissioner's motion for judgment on the pleadings (Docket No. 11) be granted, and that judgment be entered in favor of the Commissioner.

                                                /s/ P. Trevor Sharp
                                            United States Magistrate Judge

Date: October 21, 2011

---

[2] Mr. Salomon determined that Plaintiff's current functioning was *not* a decline from previously higher functioning. (Tr. at 330.) Accordingly, Plaintiff's past level of functioning is relevant to the inquiry here.